**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **ERROL BROWN, et al., on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**INNERWORKINGS, INC., et al.,**<br><br>**Defendants.** | **Case No.: SACV 18-00832-CJC(KESx)**<br><br>**ORDER GRANTING MOTION TO DISMISS [Dkt. 25]** |

## I. INTRODUCTION

Plaintiff Nancy Routhier brings this putative securities class action against Defendants InnerWorkings, Inc. ("InnerWorkings") and its former executive officers, Eric D. Belcher, Ryan K. Spohn, Jeffrey P. Pritchett, and Charles Hodgkins. (Dkt. 24

[Operative First Amended Complaint, hereinafter "FAC"].)[1] Plaintiff alleges that Defendants made material misstatements in InnerWorkings' securities filings and failed to disclose weaknesses in the company's internal reporting controls. On behalf of herself and a class of all persons and entities who purchased or acquired publicly traded securities of InnerWorkings from August 10, 2015 to May 7, 2018, Plaintiff asserts claims for violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. Before the Court is Defendants' motion to dismiss the First Amended Complaint. (Dkt. 25.) For the following reasons, the motion is **GRANTED**.

## II. BACKGROUND

InnerWorkings is a "leading global marketing execution firm" that provides its clients with marketing materials, branded merchandise, product packaging, and retail displays. (FAC ¶ 32; *id*. Ex. 1 at 5.) Founded in 2001, InnerWorkings has been a publicly traded company since 2006. (*Id*. at 6, 16.) As such, it is required to file quarterly and annual reports with the Securities and Exchange Commission ("SEC"). Each of those reports includes a certification signed by the company's executives. (*See* FAC ¶¶ 23–26, 41, 45, 50, 54, 58, 62, 67, 67, 71, 75, 79, 90.) The certification attests that, to the best of the executive's knowledge, the report contains no false or misleading statements and fairly represents the company's financial condition.

Plaintiff alleges that Defendants made a series of material misstatements in InnerWorkings' SEC filings from August 10, 2015 to May 7, 2018 (the "Class Period"). The first purported misstatement was in InnerWorkings' 10-Q report for the quarter

---

[1] Plaintiff Errol Brown originally filed this action on May 10, 2018. (Dkt. 1 [Complaint].) Plaintiff Nancy Routhier, who was later added and is represented by the same counsel as Mr. Brown, was the only individual to seek and receive appointment as lead plaintiff. (Dkt. 22 at 2–3.) Routhier filed the operative First Amended Complaint on September 25, 2018.

ending on June 30, 2016. That 10-Q report disclosed a material weakness in InnerWorkings' internal reporting controls over the recognition of "non-executive bonus compensation expense." (*Id.* ¶¶ 58, 62.) The 10-Q report also included the specific steps that InnerWorkings was taking to resolve the issue and represented that no other changes in internal controls had materially affected the company's financial reporting. (*Id.* ¶ 58.)

According to Plaintiff, this representation was materially false and misleading because Defendants "knew or recklessly disregarded" that InnerWorkings' internal controls in fact had other material weaknesses. For instance, Plaintiff claims Defendants knew in 2016 that InnerWorkings employed an improper method of revenue recognition regarding inventory for which customers had paid but that had not yet shipped. (*Id.* ¶ 59.) Despite their purported knowledge of this weakness and others, Defendants continued to file financials for 2016 and 2017 based on their allegedly deficient reporting controls, all the while claiming those controls were compliant and materially accurate. (*See id.* ¶¶ 62 [10-Q Report for Quarter Ending September 30, 2016], 66–67 [10-K Annual Report for 2016], 70–71 [10-Q Report for Quarter Ending March 31, 2017], 74–75 [10-Q Report for Quarter Ending June 30, 2017], 78–79 [10-Q Report for Quarter Ending September 30, 2017].)

In early March 2018, Defendants began to disclose additional material weaknesses in their internal reporting controls, including issues with revenue recognition. (*Id.* ¶¶ 85.) During an earnings call, Defendant Hodgkins, then-interim CFO, assured investors these weaknesses would not impact any current or previously reported financials. (*Id.* ¶ 90.) According to Plaintiff, however, Hodgkins knew or recklessly disregarded that those weaknesses affected financial reports for prior years. (*Id.* ¶ 86.) Days after Hodgkin's alleged statement, Defendants filed an annual 10-K report for 2017 that specifically outlined weaknesses in revenue recognition and customer order documentation, among

others. (*Id.* ¶ 90.) The 10-K report acknowledged that these weaknesses "impacted unbilled revenue, inventory and cost of sales." (*Id.* ¶ 90.)

On May 7, 2018, InnerWorkings announced its intention to restate its quarterly and annual financials for 2015, 2016, and 2017 based on the errors identified during its 2018 financial reporting. (*Id.* ¶ 92.) The aggregate impact of the corrections resulted in increased income, before taxes, of $0.5 to $1.5 million in 2015 and decreased income of $1.5 to $2.5 million in 2016 and $2.5 to $4.5 million in 2017. (*Id.*) Three days after the announcement, Plaintiff Errol Brown filed the instant suit, alleging that Defendants made material misstatements in their SEC filings in violation of federal securities law. (*See* Dkt. 1.) After the Court appointed Nancy Routhier as Lead Plaintiff, Routhier filed the operative First Amended Complaint. (FAC.) Defendants now move to dismiss the First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). (Dkt. 25-1 [hereinafter "Mot."].)

## III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In keeping with this liberal pleading standard, the district court should

grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

In federal court, a plaintiff alleging fraud and misrepresentation must also "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1145 (9th Cir. 2009); *UMG Recordings, Inc. v. Glob. Eagle Entm't*, 117 F. Supp. 3d 1092, 1106 (C.D. Cal. 2015). Under Rule 9(b), the plaintiff must set forth the "who, what, when, where, and how" of the alleged fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). When an artificial entity is the alleged perpetrator of the fraud, the plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *UMG Recordings*, 117 F. Supp. 3d at 1107.

## IV. ANALYSIS

Plaintiff alleges that Defendants knowingly or recklessly deceived the investing public by making materially false and misleading statements in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. Section 10(b) and Rule 10b-5 make it unlawful "for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b); *see* 17 C.F.R. § 240.10b-5. To state a claim for violation of Section 10(b) and Rule 10b-5, Plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners v. Sci.–Atlanta*, 552 U.S. 148, 157 (2008).

Defendants move to dismiss Plaintiff's Section 10(b) claim for failure to adequately plead that Defendants acted with the requisite scienter. Claims brought under Section 10(b) must meet the heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PLSRA"). *See Semegen v. Weidner*, 780 F.2d 727, 729, 734–35 (9th Cir. 1985); 15 U.S.C. § 78u-4(b)(2)(A). Accordingly, a plaintiff must "state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind." *See Gompper,* 298 F.3d at 895 (*quoting* 15 U.S.C. § 78u-4(b)(2)) (emphasis added in *Gompper*). In this circuit, the "required state of mind" includes not only "intent to deceive, manipulate, or defraud," but also "deliberate recklessness." *Schueneman v. Arena Pharm.*, 840 F.3d 698, 705 (9th Cir. 2016) (citations omitted). Deliberate recklessness is "an extreme departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id*. (emphasis in *Schueneman*) (citation and quotation marks omitted).

The Supreme Court has set forth three rules to aid district courts in determining whether a plaintiff bringing a Section 10(b) claim has made allegations of scienter sufficient to survive a Rule 12(b)(6) motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). First, district courts must "accept all factual allegations in the complaint as true." *Id.* Second, they must consider the complaint in its entirety to determine whether it has adequately stated a claim for relief. "The inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 323. Third, in "determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Id.* Ultimately, the complaint will survive "only if a reasonable person

would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

Plaintiff argues there are several independent grounds that collectively support a strong inference of scienter, namely: (1) Defendants' misapplication of Generally Accepted Accounting Principles ("GAAP"), (2) their knowledge and disclosure of material weaknesses in InnerWorkings' internal reporting controls, (3) the purported "turmoil" and turnover in InnerWorkings' finance department during the Class Period, and (4) the 2018 restatement of InnerWorkings' financials for 2015, 2016, and 2017. The Court addresses each argument in turn.

Plaintiff first claims that Defendants' misapplication of fundamental GAAP standards regarding revenue recognition supports a strong inference of scienter. (Dkt. 29 [Pl.'s Opp'n to Mot., hereinafter "Opp'n"] at 9–13.) The Ninth Circuit has held that "significant violations of GAAP standards can provide evidence of scienter" when they are "pled with particularity." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005). But scienter cannot be established merely based on publication of "inaccurate accounting figures, even when in violation of GAAP." *Id.* While "specific admissions from top executives that they are involved in every detail of the company" may support an inference of scienter based on improper accounting reports, generalized allegations of executives' "management style, their interaction with other officers and employees, their attendance at meetings, and their receipt of unspecified weekly or monthly reports are insufficient." *Id.* (citation omitted).

Plaintiff has failed to plead facts that support a strong inference that Defendants acted with the requisite scienter based on their misapplication of GAAP. Plaintiff claims that Defendants violated GAAP's revenue recognition policies by recognizing revenue for inventory that was still in their warehouses. (FAC ¶ 100.) But Plaintiff has failed to

allege specific facts suggesting the individual Defendants "personally directed" InnerWorkings' GAAP compliance, "manually adjust[ed]" any data, or otherwise were involved in such details of the company. *Cf. Daou*, 411 F.3d at 1023. Nor has Plaintiff pled any facts indicating that the individual Defendants knew that accounting principles were "being incorrectly interpreted and applied." *See In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 973 (N.D. Cal. 2010) (stating that "bare allegations that [company] officers had access to financial statements and analyzed those statements does not support the inference that defendants knew about the accounting error").[2]

Plaintiff next asserts that Defendants' disclosure of material weaknesses in InnerWorkings' internal reporting controls also supports a strong inference of scienter. Plaintiff contends that the amended complaint "alleges, in detail, that Defendants knew . . . InnerWorkings' internal controls were ineffective." (Opp'n at 15.) In support of this assertion, Plaintiff appears to make two arguments, neither of which are persuasive. First, Plaintiff claims that knowledge of internal weaknesses can be inferred from Defendants' failure to exhaustively investigate and uncover every possible control weakness after it first reported issues with the company's controls over compensation in 2016. (*Id.* at 15–16.) However, Plaintiff has failed to offer authority for the proposition that just because a defendant learns of one control weakness, it acts culpably when it does not find all possible weaknesses. Such logic is particularly unconvincing where, as here, the material weaknesses in internal reporting controls are unrelated. (*Compare* FAC ¶ 58 [discussing 2016 disclosure of material weakness related to "non-executive bonus

[2] Plaintiff also argues that Defendants' violation of InnerWorkings' own revenue recognition policy supports a finding of scienter. As a threshold matter, the company's revenue recognition policy seemingly does not bar it from recognizing revenue for inventory which customers had purchased but not yet received. (*See* FAC ¶ 36 [stating that revenue is "*typically*" recognized "upon shipment or delivery" of the product to the customer (emphasis added)].) Second, Plaintiff has still failed to plead any facts suggesting Defendants knew of or recklessly disregarded any purported violation of that policy.

compensation expense”], *with id.* ¶ 90 [discussing subsequent disclosures relating to issues in revenue recognition and customer order documentation].)

Second, Plaintiff contends that Defendants’ knowledge of issues with their internal reporting controls can be inferred based on their effort to “minimize” control weaknesses and “downplay” their impact. (Opp’n at 17.) To the extent Plaintiff refers to statements Defendants made during the Class Period, she fails to allege any facts suggesting that Defendants had reason to know the reporting controls suffered from material weaknesses when they told their investors otherwise. Without specific factual allegations, the mere existence of deficient internal controls is “insufficient to give rise to a strong inference of scienter.” *Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1364–65 (C.D. Cal. 2014) (collecting cases). And to the extent Plaintiff refers to statements Defendants made outside the Class Period, they are not relevant to determining whether Defendants acted with scienter when making the alleged prior misstatements. *See In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158825, at *57 (S.D. Cal. Mar. 30, 2005) (stating that post-class-period statements “are simply irrelevant and cannot establish . . . scienter”).

Plaintiff next argues that purported “turmoil” and turnover in InnerWorkings’ finance department also supports a strong inference of scienter. In support of this contention, Plaintiff points to two allegations in the amended complaint. First, that InnerWorkings’ then-CFO, Defendant Pritchett, resigned on December 6, 2017 “due to personal matters inconsistent with Company policy.” (FAC ¶ 81.) Second, that an unnamed former employee stated that at the time of Pritchett’s departure, the company’s “finance function was in turmoil, with a lack of process and responsibilities.” (*Id.*)

Neither allegation is sufficient to meet the heightened pleading standards under the PSLRA. As to Pritchett’s resignation, “conclusory allegations that a financial manager

resigns or retires during the class period or shortly before the corporation issues its restatement, without more, cannot support a strong inference of scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009). Here, Plaintiff offers no more. There is no suggestion of "suspicious circumstances" surrounding Pritchett's resignation. *See id.* As to the purported statement by a former employee, Plaintiff does not allege any facts that establish the employee's reliability or personal knowledge. *Id.* at 995–96 (stating that a complaint relying on statements from a confidential witness must describe the witness with "sufficient particularity to establish their reliability and personal knowledge"). It is unclear whether the former employee worked in the finance department or had any exposure to relevant information.

Lastly, Plaintiff asserts that Defendants' decision to restate their financials for 2015, 2016, and 2017 indicates that they "knew or recklessly disregarded" that their SEC filings were misleading. The Ninth Circuit has held that generally, "the mere publication of a restatement is not enough to create a strong inference of scienter." *Id.* at 1000; *see also Okla. Firefighters*, 50 F. Supp. 3d at 1359. There are two narrow exceptions to this rule. Under the first exception, the plaintiff must provide "detailed and specific allegations about management's exposure to factual information within the company" that support a strong inference that the individual defendants knew the company's filings were incorrect. *Zucco Partners*, 552 F.3d at 1000 (citation and quotation marks omitted). Under the second exception, the plaintiff must allege that the purported accounting errors were so prominent or "patently obvious" that it would be "absurd to suggest that management was without knowledge of the matter." *Id.* (citation and quotation marks omitted).

Plaintiff has failed to show that either exception applies here. As already noted, Plaintiff offers only boilerplate and conclusory allegations about the individual Defendants' role in the company without describing what factual information they

received. Further, InnerWorkings' accounting errors impacted revenue by less than one percent. (Mot. at 10; FAC Ex. 1 at 71, 74.) Plaintiff has failed to plausibly allege that it would be "absurd" for the individual Defendants to have missed the accounting errors at issue here. When considered collectively, Plaintiff's allegations simply fail to give rise to "a *strong* inference that the [Defendants] acted with the required state of mind." *See Gompper*, 298 F.3d at 895 (quoting 15 U.S.C. § 78u–4(b)(2)) (emphasis added in *Gompper*). Accordingly, Plaintiff's first claim for violation of Section 10(b) and Rule 10b-5 is **DISMISSED WITH FOURTEEN DAYS' LEAVE TO AMEND.**

Plaintiff's claim under Section 20(a) of the Securities Exchange Act fails for similar reasons. Under Section 20(a), any person who controls a person liable for violating Section 10(b) is jointly and severally liable for the violation. 15 U.S.C. § 78t(a). Accordingly, to plead a Section 20(a) claim, Plaintiff "must first prove a primary violation of underlying federal securities laws . . . and then show that the defendant exercised actual power over the primary violator." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014). Because Plaintiff has failed to plausibly plead an underlying securities violation, her Section 20(a) claim is likewise **DISMISSED WITH FOURTEEN DAYS' LEAVE TO AMEND**.

//

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**. Plaintiff's First Amended Complaint is **DISMISSED WITH FOURTEEN DAYS' LEAVE TO AMEND**.

DATED: March 27, 2019

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE